UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

    v.

VINAYA K. JESSANI,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Criminal No.: 14cr264

Filed:

Violation:  15 U.S.C. § 1

## INFORMATION

The United States of America, acting through its attorneys, charges that:

## SHERMAN ACT CONSPIRACY
### (15 U.S.C. §1)

1.    VINAYA K. JESSANI  is hereby made a defendant on the charge stated below.

## RELEVANT PARTIES AND ENTITIES

2.    At all times relevant to this Information, Company 1 was a limited liability corporation existing under the laws of Delaware, with its principal place of business in New York, New York.  Company 1 purchased municipal tax liens sold at auctions in the State of New Jersey on behalf of clients who invested capital with Company 1.

3.    Defendant VINAYA K. JESSANI is a resident of New York, New York.  At all times relevant to this Information, JESSANI was employed by Company 1, serving as a Senior Vice President and Portfolio Manager.  JESSANI was responsible for managing a number of

1

Company 1's municipal tax lien portfolios and overseeing Company 1's day-to-day operations, including supervising the bidders who were authorized to bid on behalf of Company 1 at municipal tax lien auctions in New Jersey. JESSANI also attended certain municipal tax lien auctions in New Jersey, where he bid on and purchased tax liens on behalf of Company 1.

4.      Various other persons and entities, not named as defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof. Whenever in this Information reference is made to any act, deed, or transaction of any corporation, such allegation shall be deemed to mean that the corporation engaged in such act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## BACKGROUND

5.      A municipal tax lien, as used herein, is an encumbrance on real property imposed by a municipality under the laws of the state of New Jersey. When the owner (or owners) of real property fails to pay real property taxes, water taxes, sewer taxes, or other taxes, the municipality in which the property is located may attach a lien to the property. If, after a certain waiting period, a lien remains unpaid, the lien may be sold at a public auction. The value of a lien sold at an auction includes the amount of the unpaid taxes on the property, any accrued interest, and any applicable costs or penalties.

6.      There are approximately 566 municipalities in New Jersey, all of which impose certain taxes on real property situated within the municipal borders. At least once each year,

2

each municipality may conduct a public auction in order to sell outstanding tax liens the
municipality has imposed.

7.      Each municipal tax lien sold at an auction in New Jersey has a specific interest
rate.  The interest rate is set by a competitive, public auction, on a lien-by-lien basis.

8.      The statutory maximum interest rate permitted on any tax lien sold in New Jersey
is 18 percent.  The interest rate may be as low 0 percent.  Accordingly, at a municipal tax lien
auction the bidding opens at 18 percent, and the bidders may bid the interest rate down to 0
percent.

9.      If the interest rate on a given lien reaches 0 percent, the bidders may bid on a
"premium" they would be willing to pay in order to purchase the tax lien.  The "premium" is a
whole-dollar amount, and is held in escrow by the municipality until the taxpayer's debt is
satisfied and the certificate evidencing ownership of the tax lien is redeemed, at which time the
municipality returns the premium to the lien holder.

10.     A lien holder has a number of rights with respect to the real property encumbered
by a municipal tax lien.  The lien holder is entitled to receive the interest payments in their
entirety, plus the outstanding principal of the lien.  "Subsequent taxes" are unpaid taxes that
became due on the property after the imposition of the tax lien sold at auction.  A lien holder has
the right to pay "subsequent taxes" on the property, and to collect interest from the property
owner on any "subsequent taxes" paid by the lien holder.  By statute, the interest rate associated
with subsequent taxes is automatically 18 percent.  A lien holder also has the right, after a two-
year period from the date of the purchase of the tax lien, to foreclose on the property owner's

3

right of redemption of the tax lien and take title to the property if the taxes owed on the property, accrued interest, or any applicable costs or penalties remain unpaid.

11.     The owner of property encumbered by a tax lien is responsible for paying the entire balance of delinquent taxes owed, plus interest, if any, as determined by the auction, in addition to any subsequent taxes and interest.

## DESCRIPTION OF THE OFFENSE

12.     Beginning at least as early as 1994 and continuing until as late as February 2009, the exact dates being unknown to the United States, in the District of New Jersey and elsewhere, VINAYA K. JESSANI and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition for the purchase of municipal tax liens sold at certain auctions within the District of New Jersey, by allocating and submitting collusive and non-competitive bids for the purchase of said tax liens.  The combination and conspiracy engaged in by JESSANI and his co-conspirators was in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

13.     The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among VINAYA K. JESSANI and his co-conspirators, the substantial terms of which were to allocate, and to rig bids for the purchase of, municipal tax liens sold at certain auctions within the District of New Jersey.

/ / /

/ / /

/ / /

4

## MEANS AND METHODS OF THE CONSPIRACY

14.    For the purpose of forming and carrying out the charged combination and conspiracy, VINAYA K. JESSANI and his co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)    prior to the commencement of certain auctions for the sale of municipal tax liens, discussing and agreeing not to compete for the purchase of certain municipal tax liens;

(b)    allocating the purchase of certain municipal tax liens among the co-conspirators, including, from time to time, by flipping a coin, drawing numbers out of a hat, drawing cards, or drawing straws;

(c)    refraining from bidding on certain municipal tax liens pursuant to agreements reached among the co-conspirators so as to permit the designated winning bidder to purchase certain municipal tax liens at collusive and non-competitive interest rates; and

(d)    bidding on and purchasing municipal tax liens in accordance with those agreements at collusive and non-competitive interest rates.

15.    Pursuant to his managerial role with Company 1, defendant VINAYA K. JESSANI instructed and encouraged certain of Company 1's bidders under his supervision, directly or indirectly, to attempt to allocate and to allocate liens and rig bids with other co-conspirators, was aware certain bidders did so, and approved such conduct.

5

16.    Pursuant to his role as a bidder for Company 1, at certain auctions for the sale of municipal tax liens, defendant VINAYA K. JESSANI agreed to and did allocate liens and rig bids with other co-conspirators.

## INTERSTATE TRADE AND COMMERCE

17.    During the period covered by this Information, monetary funds from outside the State of New Jersey were used by one or more of the co-conspirators to purchase tax liens at auctions subject to the conspiracy.  In addition, VINAYA K. JESSANI and certain co-conspirators residing outside the state of New Jersey attended certain auctions within the state of New Jersey, and participated in allocating liens among and rigging bids with JESSANI and co-conspirators.

18.    During the period covered by this Information, the activities of VINAYA K. JESSANI and his co-conspirators with respect to the sale of municipal tax liens that are the subject of this Information were within the flow of, and substantially affected, interstate trade and commerce.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

## JURISDICTION AND VENUE

19.     The combination and conspiracy charged in this Information was carried out, in

part, within the District of New Jersey within the five years preceding the filing of this

Information.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: 12/12/2013

_____
BRENT C. SNYDER
Deputy Assistant Attorney General

_____
MARVIN PRICE
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
MARC SIEGEL
Acting Chief, New York Office

_____
BRYAN C. BUGHMAN
JOHN W. VAN LONKHUYZEN
CHARLES V. REILLY
KRISTINA N. SRICA
Trial Attorneys, Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Room 3630
New York, N.Y. 10278
(212) 335-8000

7

CASE NUMBER: 14-264

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

VINAYA K. JESSANI

# INFORMATION FOR

## WILLIAM J. BAER
*ASSISTANT ATTORNEY GENERAL*
*ANTITRUST DIVISION*

BRYAN BUGHMAN
TRIAL ATTORNEY
*212-335-8041*